# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS LE'ROY HENNAGAN, JR., | CV F 02 6097 AWI SMS P |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR SUMMARY JUDGMENT (Doc. 79) |
| v. | |
| GAIL LEWIS, et. al., | |
| Defendants. | |

## I. PROCEDURAL HISTORY

Thomas Le'Roy Hennagan, Jr. ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the instant action on September 10, 2002. By Order filed October 24, 2002, the Court dismissed Plaintiff's Complaint, with leave to amend.[1] Plaintiff filed an Amended Complaint on November 13, 2002. On April 11, 2003, the Court dismissed the Amended Complaint with leave to amend. On April 21, 2003, Plaintiff informed the Court that he wished to proceed on his Equal

---

[1] In that Order, the Court found that plaintiff stated a cognizable Equal Protection claim and cognizable state law claim under California Government Code § 11340.5.

1

Protection and State Law claims found to be cognizable by the Court. Thus, the Court issued Findings and Recommendations on July 21, 2003. The Order Adopting the Findings and Recommendations was issued on June 19, 2003.

On July 14, 2003, Defendants filed a Motion for Summary Judgment. Plaintiff filed his Opposition to the Motion for Summary Judgment on March 28, 2005. Defendants filed a Reply to the Opposition on March 30, 2005.

## II. PLAINTIFF'S ALLEGATIONS

The events at issue allegedly occurred while Plaintiff was confined at Pleasant Valley State Prison ("PVSP"). In his Amended Complaint, Plaintiff alleges that Defendants violated Equal Protection under the law by classifying him as ineligible for a level II institution transfer. Plaintiff also alleges that defendants implemented and enforced an illegal criterion during his reclassification proceeding in violation of California Government Code § 11340.5(a) and California Penal Code §§ 5058(a), (c), and 134.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v.

Diebold, Inc., 369 U.S. 654, 655 (1962) (*per curiam*). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## IV. STATEMENT OF UNDISPUTED FACTS[2]

1. Plaintiff appeared at a classification hearing held on April 17, 2002, before the Unit Classification Committee for the purpose of conducting an annual review of Plaintiff's classification. (Exh. A at 1, Defendant's Separate Statement of Facts in Support of Motion for Summary Judgment [hereinafter "Defendant's SSF"]; Amended Complaint at 9:4-5; Plaintiff's Statement of Undisputed Facts [hereinafter "Plaintiff's SUF"][3] at ¶ 4.)

2. Decisions affecting an inmate's institutional placement are made through the classification process. The classification process is used to place inmates in the lowest custody level consistent with specified case factors and public safety concerns. The classification process is also used to house inmates according to their classification score based on objective information and criteria, unless case factors or departmental requirements indicate otherwise. These goals are reflected in Section 62010.1 of the California Department of Corrections ("CDC") Operations Manual (DOM). (Decl. of J. Gonzales ¶ 3; Exh. A at 4, Defendants SSF; Plaintiff's SUF at ¶ 5.)

3. The classification process shall take into consideration the inmate's needs, interests and desires, his/her behavior and placement score in keeping with the department and institution's/facility's program and security missions and public safety. (Decl. of J. Gonzales at

---

[2]These facts are undisputed for the sole purpose of this motion.

[3]Attached to the Opposition to the Motion for Summary Judgment.

4

1  ¶4; Exh. A. at 5, Defendants SSF; Plaintiff's SUF at ¶6. )

2    4. According to Section 62010.6.1 of the DOM, the primary factor in the placement decisions is the classification score. The higher the classification score an inmate has, the higher level of custodial placement. However, administrative necessity, such as institutional security, public safety, and the availability of housing, may require a placement that does not correspond with the inmates classification score. Pursuant to Section 3375.1(a)(2) of the California Code of Regulations ("CCR"), inmates with a classification score are generally placed in a Level II facility. (Decl. of J. Gonzales at ¶5; Exh. A at 6, 7, Defendants SSF; Plaintiff's SUF at ¶7.)

    5. PVSP as adopted a local supplement to the DOM, Section 62010.8.4, which sets forth the criteria used for placing inmates with classification scores of 27 or less. Section 62010.8.4 uses the same criteria set forth in Administrative Bulletin (AB) 91/27 (amended). (Decl. of J. Gonzales at ¶ 6; Exh. A at 8-19, Defendants SSF; Plaintiff's SUF at 8.)[4]

    6. According to Section 62010.8.4, if a PVSP inmate has a classification score of 27 or less, he must be placed at PVSP's Minimum Support Facility ("MSF"). The exception to the rule is where an inmate has administrative determinants that disqualify him for PVSP's MSF. The administrate determinants that may preclude a PVSP inmate from PVSP's MSF are discussed in Section 62010.8.4 of PVSP's DOM Supplement and AB 91/27. (Decl. of J. Gonzales at  ¶7; Exh. A at 8-19, Defendants SSF; Plaintiff's SUF at ¶9.)[5]

    7. The Unit Classification Committee ("UCC") at PVSP performs the initial screening of potential MSF inmates. Any decision to deny at PVSP inmate a MSF status must be based on the administrative determinants discussed in Section 62010.8.4 and AB 91/27. The decision to deny MSF status must be clearly delineated in the UCC's CDC 128G, which documents the hearing. If the UCC determines that a PVSP inmate's placement at the MSF is questionable,

---

[4] Plaintiff disputes the use of Section 62010.8.4 as authority for placement of inmates and further objects to the term "methodology" as used in the Declaration of J. Gonzales. However, he does not dispute the facts that it *is* used or that it follows the criteria outlined in AB 91/27. Thus, the statement is undisputed.

[5] Again, Plaintiff disputes PVSP's reliance on Section 62010.8.4 of PVSP's DOM Supplement for determining classification. He does not, however, dispute the content of Section 62010.8.4 or that the administrative determinants are discussed in the above referenced documents.

5

then the UCC will refer the matter to the Institutional Classification Committee ("ICC").  The UCC's duties are set forth in Section 62010.8.4 of the PVSP DOM Supplement.  (Decl. of J. Gonzales at ¶8; Exh. A at 8-19, Defendants SSF; Plaintiff's SUF at ¶ 10.)[6]

8.  Thus, an inmate with between 3 and 5 years remaining on his sentence who does not meet any of the above factors, should be placed at PVSP's MSF.  (Decl. of J. Gonzales at ¶11; Exh. A at 8-10, Defendants SSF; Amended Complaint at 24:15-19)

9.  At the April 17, 2002, hearing, the UCC noted that Plaintiff's classification score was 25.  (Exh. A at 1, Defendants SSF; Amended Complaint at 9:6.)

10.  The UCC noted that Plaintiff's earliest possible release date was January 25, 2006, which is more than three years from April 17, 2002, and less than five years from May 7, 2002.  (Exh. A at 2, Defendants SSF; Amended Complaint at 9:20, 9:16-7, 10:22)

11.  The UCC noted that Plaintiff's conviction for robbery and burglary, both with no injuries or weapons, were not precluding factors.  Based on these facts, the UCC referred Plaintiff to the ICC for placement at PVSP's MSF.  (Exh. A at 1, Defendants SSF; Amended Complaint at 9:19.)[7]

12.  On May 7, 2002, Plaintiff appeared before the ICC to conduct the MSF review as referred by the April 17, 2002, UCC.  The ICC noted that Plaintiff's earliest possible release date was January 25, 2006, which is more than 3 years from May 7, 2002, and less than five years from May 7, 2002.  The ICC also noted that Plaintiff's conviction and arrest history did not preclude him from MSF placement.  The ICC reduced Plaintiff's custody status to MSF and referred him to the Classification and Parole Representative for a transfer to PVSP's MSF facility.  (Exh. A at 2, Defendants SSF; Amended Complaint at 10:22; Plaintiff's SUF at ¶17.)[8]

13.  On August 19, 2002, Plaintiff received a third level decision from the Inmate

---

[6] Again, Plaintiff challenges the use of this procedure, however, he does not dispute that the procedure outlined is, in fact, used.

[7] Although Plaintiff disputes the procedure or section applied to determine his classification, however, he does not dispute the fact that these factors were not determinant under Section 62010.8.4.

[8] Here again, Plaintiff argues that the wrong procedure or standards were applied to his case. He does not, however, dispute that the above occurred.

6

Appeals Branch regarding the April 17, 2002, action by the UCC. (Exh. A at 23-25; Amended Complaint at 14:9; Opposition to Motion for Summary Judgment ("Opposition") at 7:9-11, 26:8-11).

14. On September 10, 2002, Plaintiff received a decision on the ICC action. (Opposition at 7:9-11; 26:8-11; Plaintiff's SUF at ¶18.)

15. Plaintiff did not present his claims for damages based on Defendant's state law violations to the Victim Compensation and Government Claims Board. (Exh. A at 3, Defendants SSF; Decl. of S. Kokkonen at ¶¶ 4, 5; Plaintiff's SUF at ¶ 19.)[9]

## IV. ANALYSIS

### A. Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established in two ways. A plaintiff generally establishes an equal protection claim by showing that a defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9 Cir.2001) (citing Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.1998), cert. denied, 525 U.S. 1154 (1999)). However, if the state action in question does not involve either a fundamental right of a suspect classification, a plaintiff may establish a "class of one" equal protection claim by showing that he " has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). Without more, the selective enforcement of valid laws is not sufficient to establish that a defendant's conduct is irrational. Freeman v. City of Santa Ana, 68 F.3d 1180, 1188 (9th Cir.1995) (citing Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978); United States v. Kidder, 869 F.2d 1328, 1335 (9th Cir.1989)). If an equal protection claim is based upon selective enforcement of a valid law, a plaintiff must show that others who

---

[9] Plaintiff concedes that he did not present his claims to the Victim Compensation and Government Claims Board because he did not have to.

are similarly situated have not been prosecuted, and that the prosecution is based upon an "impermissible motive." Freeman, 68 F.3d at 1187.

In this case, Plaintiff's allegation is that Defendants denied him Equal Protection when they determined his classification was such that he was eligible for placement in a MSF instead of a more stringent Level II facility. In his Opposition to the Motion for Summary Judgment, states that his preclusion from a Level II classification and transfer denied him of participation in a Prison Industry Program. (Opposition at 27:608; Exh. A at 3 [indicating plaintiff expressed his desire for a Level II transfer].) Plaintiff presents no evidence, however, of discriminatory intent by Defendant's, that Defendants treated him differently from similarly situated inmates, or that there was no rational basis for their classification of him as eligible for a Minimum Support Facility. Instead, Plaintiff relies solely on his statement that discriminatory intent is "evident" from the disputed facts. As noted above, the party opposing a Motion for Summary Judgment may not rely solely upon the denials of its pleadings, but is required to *tender evidence* of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e) (emphasis added); Matsushita, 475 U.S. at 586 n.11.

Here, Plaintiff provides only his denial that Defendants acted without discriminatory intent. It is undisputed that Plaintiff's classification score was 25 and that he had between three and five years remaining on his sentence which qualified him for placement in a Minimum Support Facility under Section 62010.8.4. (Exh. A, Defendant's Separate Statement of Facts; Amended Complaint at 9:6, 16-17.) In addition, Plaintiff concedes in his Opposition that other inmates with three to five years remaining on their sentence and no precluding factors are being classified as eligible for placement in a Minimum Support Facility under the same guidelines. (Opposition at 24:4-8) Thus, Plaintiff is not being treated differently from inmates similarly situated to him.

Based on the above, the Court concludes that there exists no genuine issue of material fact that Defendants classification of Plaintiff as eligible for placement in a Minimum Support Facility violated his right to Equal Protection. Accordingly, the Court will recommend that

summary judgment be granted in favor of Defendants.

### B. State Law Claim

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

In this case, Defendants contend that Plaintiff has failed to comply with Government Claims Act requiring him to make his claim for damages to the State Board of Control prior to bringing a legal action. (Opposition at 7; Reply at 2.) In addition, Defendants argue that Plaintiff's request for injunctive relief is moot because Plaintiff is no longer confined at PVSP and no longer has a classification score of 25.

Plaintiff opposes the Motion on the grounds that he has not filed a state tort action and thus, is not required to first go to the State Board of Control. In addition, Plaintiff alleges that his claim for relief is not moot because his Equal Protection Claim has not been dismissed by the Court.

Under 28 U.S.C. § 1367(c)(3), the court has discretion to dismiss state law claims when it has dismissed all of plaintiff's federal claims. As the Court has recommended that summary judgment be granted in favor of Defendants on the Equal Protection claim, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) as to the remaining state law claim. See Ove v. Gwinn, 264 F.3d 817, 826 (9th Cir.2001) (court may decline to exercise supplemental jurisdiction over related state-law claims once it has "dismissed all claims over which it has original jurisdiction.")

**D. CONCLUSION AND RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the Motion for Summary Judgment on Plaintiff's Eighth Amendment claim against all Defendants be GRANTED.  The Court also RECOMMENDS that the District Court decline to declines to exercise supplemental jurisdiction over the pendent state law claim on the basis of dismissal of the Eighth Amendment claim.

The Court HEREBY ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     May 12, 2005                             /s/ Sandra M. Snyder
icido3                                    UNITED STATES MAGISTRATE JUDGE